# EXHIBIT A

# STATE OF NORTH CAROLINA

_____Wake_____ County

In The General Court Of Justice
☐ District ☒ Superior Court Division

| | |
|---|---|
| *Name Of Plaintiff*<br>Brian McKnight | |
| *Address*<br>3276 Buford Drive, #104357 | **CIVIL SUMMONS** |
| *City, State, Zip*<br>Buford      GA    30519 | ☐ **ALIAS AND PLURIES SUMMONS (ASSESS FEE)** |

**VERSUS**

G.S. 1A-1, Rules 3 and 4

| | |
|---|---|
| *Name Of Defendant(s)*<br>Foxy/WFXC/K 107.1/104.3 Radio Station; Urban One, Inc. | *Date Original Summons Issued* |
| | *Date(s) Subsequent Summons(es) Issued* |

### To Each Of The Defendant(s) Named Below:

| *Name And Address Of Defendant 1*<br>Foxy/WFXC/K 107.1/104.3 Radio Station<br>8001 Creedmoor Road<br>Suite 101<br>Raleigh      NC   27613 | *Name And Address Of Defendant 2*<br>Urban One, Inc.<br>Registered Agent: Corporation Service Company<br>2626 Glenwood Avenue, Suite 550<br>Raleigh      NC   27608 |
|---|---|

⚠️ **IMPORTANT! You have been sued! These papers are legal documents, DO NOT throw these papers out! You have to respond within 30 days. You may want to talk with a lawyer about your case as soon as possible, and, if needed, speak with someone who reads English and can translate these papers!**

**¡IMPORTANTE! ¡Se ha entablado un proceso civil en su contra! Estos papeles son documentos legales. ¡NO TIRE estos papeles!**
**Tiene que contestar a más tardar en 30 días. ¡Puede querer consultar con un abogado lo antes posible acerca de su caso y, de ser necesario, hablar con alguien que lea inglés y que pueda traducir estos documentos!**

**A Civil Action Has Been Commenced Against You!**

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| *Name And Address Of Plaintiff's Attorney (if none, Address Of Plaintiff)*<br>Ranchor Harris Law, PLLC<br>S. Ranchor Harris, III<br>1784 Heritage Center Drive, Suite 204-E<br>Wake Forest    NC   27587 | *Date Issued*  1/22/2026 *Time* 11:48 pm  ☐ AM ☐ PM |
|---|---|
| | *Signature*    **/s/ Marina Presnell** |
| | ☒ *Deputy CSC*  ☐ *Assistant CSC*  ☐ *Clerk Of Superior Court* |

| ☐ ENDORSEMENT (ASSESS FEE)<br>This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days. | *Date Of Endorsement*    *Time*  ☐ AM ☐ PM |
|---|---|
| | *Signature* |
| | ☐ *Deputy CSC*  ☐ *Assistant CSC*  ☐ *Clerk Of Superior Court* |

**NOTE TO PARTIES:** *Many counties have **MANDATORY ARBITRATION** programs in which most cases where the amount in controversy is $25,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration and, if so, what procedure is to be followed.*

(Over)

AOC-CV-100, Rev. 12/23
© 2023 Administrative Office of the Courts

| | RETURN OF SERVICE | |
|---|---|---|

I certify that this Summons and a copy of the complaint were received and served as follows:

## DEFENDANT 1

| Date Served | Time Served | ☐ AM  ☐ PM | Name Of Defendant |
|---|---|---|---|

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

*Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)*

| ☐ Acceptance of service.<br>Summons and complaint received by: ☐ Defendant 1.<br>☐ Other: *(type or print name)* | Date Accepted | Signature |
|---|---|---|

☐ Other manner of service *(specify)*

☐ Defendant WAS NOT served for the following reason:

## DEFENDANT 2

| Date Served | Time Served | ☐ AM  ☐ PM | Name Of Defendant |
|---|---|---|---|

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

*Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)*

| ☐ Acceptance of service.<br>Summons and complaint received by: ☐ Defendant 2.<br>☐ Other: *(type or print name)* | Date Accepted | Signature |
|---|---|---|

☐ Other manner of service *(specify)*

☐ Defendant WAS NOT served for the following reason:

| Service Fee Paid<br>$ | Signature Of Deputy Sheriff Making Return |
|---|---|
| Date Received | Name Of Sheriff (type or print) |
| Date Of Return | County Of Sheriff |

# STATE OF NORTH CAROLINA

_____WAKE_____ County

File No.
26CV003013-910

In The General Court Of Justice
☐ District ☒ Superior Court Division

**Name Of Plaintiff**
Brian McKnight

**Address**
3276 Buford Drive, #104357

**City, State, Zip**
Buford          GA      30519

## CIVIL SUMMONS
☐ **ALIAS AND PLURIES SUMMONS (ASSESS FEE)**

G.S. 1A-1, Rules 3 and 4

### VERSUS

**Name Of Defendant(s)**
Foxy/WFXC/K 107.1/104.3 Radio Station; Urban One, Inc.; Karen Clark

**Date Original Summons Issued**

**Date(s) Subsequent Summons(es) Issued**

**To Each Of The Defendant(s) Named Below:**

| Name And Address Of Defendant 1 | Name And Address Of Defendant 2 |
|---|---|
| Karen Clark<br>8001 Creedmoor Road<br>Suite 101<br>Raleigh          NC      27613 | |

⚠️ **IMPORTANT! You have been sued! These papers are legal documents, DO NOT throw these papers out! You have to respond within 30 days. You may want to talk with a lawyer about your case as soon as possible, and, if needed, speak with someone who reads English and can translate these papers!**

**¡IMPORTANTE! ¡Se ha entablado un proceso civil en su contra! Estos papeles son documentos legales. ¡NO TIRE estos papeles!**
**Tiene que contestar a más tardar en 30 días. ¡Puede querer consultar con un abogado lo antes posible acerca de su caso y, de ser necesario, hablar con alguien que lea inglés y que pueda traducir estos documentos!**

**A Civil Action Has Been Commenced Against You!**

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| Name And Address Of Plaintiff's Attorney (if none, Address Of Plaintiff) | Date Issued 1/27/2026 3:00:12 pm | ☐ AM  ☐ PM |
|---|---|---|
| Ranchor Harris Law, PLLC<br>S. Ranchor Harris, III<br>1784 Heritage Center Drive, Suite 204-E<br>Wake Forest          NC      27587 | Signature  /s/ Kacey Johnson | |

☑ Deputy CSC    ☐ Assistant CSC    ☐ Clerk Of Superior Court

| ☐ ENDORSEMENT (ASSESS FEE)<br>This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days. | Date Of Endorsement | Time | ☐ AM  ☐ PM |
|---|---|---|---|
| | Signature | | |

☐ Deputy CSC    ☐ Assistant CSC    ☐ Clerk Of Superior Court

**NOTE TO PARTIES:** _Many counties have **MANDATORY ARBITRATION** programs in which most cases where the amount in controversy is $25,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if so, what procedure is to be followed._

(Over)

AOC-CV-100, Rev. 12/23
© 2023 Administrative Office of the Courts

**RETURN OF SERVICE**

I certify that this Summons and a copy of the complaint were received and served as follows:

## DEFENDANT 1

| Date Served | Time Served | ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|---|
| | | | |

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

*Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)*

| ☐ Acceptance of service.<br>Summons and complaint received by: ☐ Defendant 1.<br>☐ Other: *(type or print name)* | Date Accepted | Signature |
|---|---|---|
| | | |

☐ Other manner of service *(specify)*

☐ Defendant WAS NOT served for the following reason:

## DEFENDANT 2

| Date Served | Time Served | ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|---|
| | | | |

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

*Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)*

| ☐ Acceptance of service.<br>Summons and complaint received by: ☐ Defendant 2.<br>☐ Other: *(type or print name)* | Date Accepted | Signature |
|---|---|---|
| | | |

☐ Other manner of service *(specify)*

☐ Defendant WAS NOT served for the following reason:

| Service Fee Paid<br>$ | Signature Of Deputy Sheriff Making Return |
|---|---|
| Date Received | Name Of Sheriff (type or print) |
| Date Of Return | County Of Sheriff |

AOC-CV-100, Side Two, Rev. 12/23
© 2023 Administrative Office of the Courts

# STATE OF NORTH CAROLINA

WAKE _____ County

In The General Court Of Justice
☐ District  ☒ Superior Court Division

| | | |
|---|---|---|
| *Name And Address Of Plaintiff 1* | | |
| Brian McKnight | | |
| 3276 Buford Drive | | |
| #104357 | | |
| Buford | GA | 30519 |
| *Name And Address Of Plaintiff 2* | | |

# GENERAL
# CIVIL ACTION COVER SHEET

☒ INITIAL FILING  ☐ SUBSEQUENT FILING

Rule 5(b) of the General Rules of Practice for the Superior and District Courts

## VERSUS

| | | |
|---|---|---|
| *Name And Address Of Defendant 1* | | |
| Foxy/WFXC/K 107.1/104.3 Radio Station | | |
| 8001 Creedmoor Road | | |
| Suite 101 | | |
| Raleigh | NC | 27613 |

*Summons Submitted*  ☒ Yes  ☐ No

| | | |
|---|---|---|
| *Name And Address Of Defendant 2* | | |
| Urban One, Inc. | | |
| Registered Agent: Corporation Service Company | | |
| 2626 Glenwood Avenue, Suite 550 | | |
| Raleigh | NC | 27608 |

*Summons Submitted*  ☒ Yes  ☐ No

*Name And Address Of Attorney Or Party, If Not Represented (complete for initial appearance or change of address)*
S. Ranchor Harris, III
1784 Heritage Center Drive
Suite 204-E
Wake Forest  NC  27587

| *Telephone No.* 919-249-5006 | *Cellular Telephone No.* |
|---|---|
| *NC Attorney Bar No.* 21022 | *Attorney Email Address* ranchor@ranchorharris.com |

☒ Initial Appearance in Case  ☐ Change of Address

| *Name Of Firm* Ranchor Harris Law, PLLC | *Fax No.* 919-589-4845 |
|---|---|

*Counsel For*
☒ All Plaintiffs  ☐ All Defendants  ☐ Only: *(list party(ies) represented)*

☒ Jury Demanded In Pleading  ☐ Complex Litigation  ☐ Stipulate to Arbitration

## TYPE OF PLEADING

*(check all that apply)*

☐ Amend (AMND)
☐ Amended Answer/Reply (AMND-Response)
☐ Amended Complaint (AMND)
☐ Assess Costs (COST)
☐ Answer/Reply (ANSW-Response) *(see Note)*
☐ Change Venue (CHVN)
☒ Complaint (COMP)
☐ Confession Of Judgment (CNFJ)
☐ Consent Order (CONS)
☐ Consolidate (CNSL)
☐ Contempt (CNTP)
☐ Continue (CNTN)
☐ Compel (CMPL)
☐ Counterclaim (CTCL) *Assess Court Costs*
☐ Crossclaim *(list on back)* (CRSS) *Assess Court Costs*
☐ Dismiss (DISM) *Assess Court Costs*
☐ Exempt/Waive Mediation (EXMD)
☐ Extend Statute Of Limitations, Rule 9 (ESOL)
☐ Extend Time For Complaint (EXCO)
☐ Failure To Join Necessary Party (FJNP)

☐ Failure To State A Claim (FASC)
☐ Implementation Of Wage Withholding In Non-IV-D Cases (OTHR)
☐ Improper Venue/Division (IMVN)
☐ Including Attorney's Fees (ATTY)
☐ Intervene (INTR)
☐ Interplead (OTHR)
☐ Lack Of Jurisdiction (Person) (LJPN)
☐ Lack Of Jurisdiction (Subject Matter) (LJSM)
☐ Modification Of Child Support In IV-D Actions (MSUP)
☐ Notice Of Dismissal With Or Without Prejudice (VOLD)
☐ Petition To Sue As Indigent (OTHR)
☐ Rule 12 Motion In Lieu Of Answer (MDLA)
☐ Sanctions (SANC)
☐ Set Aside (OTHR)
☐ Show Cause (SHOW)
☐ Transfer (TRFR)
☐ Third Party Complaint *(list Third Party Defendants on back)* (TPCL)
☐ Vacate/Modify Judgment (VCMD)
☐ Withdraw As Counsel (WDCN)
☐ Other *(specify and list each separately)*

**NOTE:** *All filings in civil actions shall include as the first page of the filing a cover sheet summarizing the critical elements of the filing in a format prescribed by the Administrative Office of the Courts, and the Clerk of Superior Court shall require a party to refile a filing which does not include the required cover sheet. For subsequent filings in civil actions, the filing party must include either a General Civil (AOC-CV-751), Motion (AOC-CV-752), or Court Action (AOC-CV-753) cover sheet.*

AOC-CV-751, Rev. 3/19, © 2019 Administrative Office of the Courts

Doc ID: c5ba507e8fa9d1d4ea0032d2e471623767e6eaf8

| | CLAIMS FOR RELIEF | |
|---|---|---|
| ☐ Administrative Appeal (ADMA) <br> ☐ Appointment Of Receiver (APRC) <br> ☐ Attachment/Garnishment (ATTC) <br> ☐ Claim And Delivery (CLMD) <br> ☐ Collection On Account (ACCT) <br> ☐ Condemnation (CNDM) <br> ☐ Contract (CNTR) <br> ☐ Discovery Scheduling Order (DSCH) <br> ☐ Injunction (INJU) | ☐ Limited Driving Privilege - Out-Of-State <br> Convictions (PLDP) <br> ☐ Medical Malpractice (MDML) <br> ☐ Minor Settlement (MSTL) <br> ☐ Money Owed (MNYO) <br> ☐ Negligence - Motor Vehicle (MVNG) <br> ☐ Negligence - Other (NEGO) <br> ☐ Motor Vehicle Lien G.S. Chapter 44A (MVLN) <br> ☐ Possession Of Personal Property (POPP) | ☐ Product Liability (PROD) <br> ☐ Real Property (RLPR) <br> ☐ Specific Performance (SPPR) <br> ☒ Other *(specify and list each separately)* <br> Defamation; Negligent and Reckless <br> Publication and Supervision; <br> Vicarious Liability/Respondeat <br> Superior |

| *Date* 01 / 22 / 2026 | *Signature Of Attorney/Party* |
|---|---|

**FEES IN G.S. 7A-308 APPLY**
Assert Right Of Access (ARAS)
Substitution Of Trustee (Judicial Foreclosure) (RSOT)
Supplemental Procedures (SUPR)

**PRO HAC VICE FEES APPLY**
Motion For Out-Of-State Attorney To Appear In NC Courts In A Civil Or Criminal Matter (Out-Of-State Attorney/Pro Hac Vice Fee)

| No. | ☐ Additional Plaintiff(s) |
|---|---|
| | |
| | |
| | |
| | |
| | |

| No. | ☐ Additional Defendant(s)    ☐ Third Party Defendant(s) | Summons Submitted |
|---|---|---|
| | | ☐ Yes  ☐ No |
| | | ☐ Yes  ☐ No |
| | | ☐ Yes  ☐ No |
| | | ☐ Yes  ☐ No |
| | | ☐ Yes  ☐ No |

*Plaintiff(s) Against Whom Counterclaim Asserted*

*Defendant(s) Against Whom Crossclaim Asserted*

**STATE OF NORTH CAROLINA**
**COUNTY OF WAKE**

**GENERAL COURT OF JUSTICE**
**SUPERIOR COURT**
**26CV003013-910**

---

**BRIAN MCKNIGHT,**

    **Plaintiff,**

       **v.**

**FOXY/WFXC/K 107.1/104.3 RADIO STATION; URBAN ONE, INC.; KAREN CLARK,**

    **Defendants.**

**AMENDED COMPLAINT**

---

NOW COMES Plaintiff Brian McKnight ("Plaintiff"), by and through undersigned counsel, and for his Complaint against Defendants FOXY/WFXC/K 107.1/104.3 Radio Station, Urban One, Inc., and Karen Clark (collectively, "Defendants"), alleges and says as follows:

### PARTIES

1. Plaintiff Brian McKnight is an individual and resident of the State of Georgia.

2. Plaintiff is a nationally and internationally recognized singer, songwriter, producer, and performer with a professional career spanning more than three decades.

3. Defendant FOXY/WFXC/K 107.1/104.3 Radio Station ("FOXY 107.1") is a radio station operating in Wake County, North Carolina, with its principal place of business located at 8001 Creedmoor Road, Suite 101, Raleigh, North Carolina 27613.

4. Defendant Urban One, Inc. ("Urban One") is a Maryland corporation with its principal place of business at 1010 Wayne Avenue, 14th Floor, Silver Spring, Maryland 20910.

5. At all relevant times, FOXY 107.1 was owned, operated, managed, supervised, and/or controlled by Defendant Urban One.

6. Defendant Karen Clark is an individual believed to be a resident of the State of North Carolina and, at all relevant times, was a salaried on-air host, employee, and broadcast personality of Defendant FOXY/WFXC/K 107.1/104.3 Radio Station.

7. At all relevant times, Karen Clark was a prominent on-air personality and designated broadcast representative of Defendant FOXY/WFXC/K 107.1/104.3, whose role included conducting interviews, framing discussions, and presenting content to listeners on behalf of the station. Ms. Clark acted with the actual and apparent authority of Defendants FOXY 107.1 and Urban One, Inc., and her statements and conduct during the broadcast were reasonably understood by listeners as reflecting the station's endorsement and credibility.

8. At all relevant times, Defendant Karen Clark personally participated in the creation, endorsement, framing, and republication of defamatory statements concerning Plaintiff, including by making affirmative statements, asking leading questions, validating accusations, and exercising editorial discretion during a scheduled broadcast.

9. Defendant Karen Clark acted within the course and scope of her employment, and also acted individually and personally in publishing and endorsing defamatory statements, rendering her jointly and severally liable under North Carolina law.

10. At all relevant times, the acts and omissions of FOXY 107.1, its hosts, employees, and agents were undertaken within the course and scope of their employment and agency with Urban One.

11. At all relevant times, Rickey Smiley was a nationally syndicated radio host, media personality, and on-air talent affiliated with Defendant Urban One, Inc., and served as the host and public face of *The Rickey Smiley Morning Show*, a program produced, edited, distributed, and controlled by Urban One.

12. At all relevant times, Mr. Smiley acted with the actual and apparent authority of Urban One, Inc., including authority to present, comment upon, frame, republish, select, and edit content to a national audience through Urban One–owned radio stations, podcasts, and digital platforms.

## JURISDICTION AND VENUE

13. This Court has subject-matter jurisdiction pursuant to N.C. Gen. Stat. § 1-75.4.

14. Venue is proper in Wake County pursuant to N.C. Gen. Stat. § 1-82 because the acts and omissions giving rise to this action occurred in Wake County, North Carolina, and Defendants conduct business in this County.

## STATEMENT OF FACTS

15. For decades, Plaintiff Brian McKnight has maintained an outstanding professional reputation in the music and entertainment industry and among the general public.

16. Plaintiff's career includes seventeen (17) studio albums, numerous hit singles, multiple award nominations, sold-out concert performances, and longstanding relationships with venues, promoters, sponsors, and fans.

17. Plaintiff's reputation and livelihood depend heavily upon public trust, credibility, and professional goodwill.

18. On or about January 23, 2025, Defendant FOXY/WFXC/K 107.1/104.3 broadcast a recorded interview conducted by on-air host Karen Clark (hereinafter "Ms. Clark") with Julie McKnight (hereinafter "Ms. McKnight") from its Raleigh, North Carolina studio.

19. Prior to and during the January 23, 2025, FOXY/WFXC/K 107.1/104.3 broadcast, Ms. McKnight had publicly advanced a narrative—through her book *Mama Bear: Beautifully Blended* and multiple media interviews— that accused Plaintiff of abuse, neglect,

dishonesty, and intentional interference with careers. Those same allegations were reintroduced, endorsed, and amplified during the FOXY 107.1 broadcast.

20. The interview was aired over terrestrial radio and simultaneously published to Defendant's official YouTube channel.

21. As of January 21, 2026, the interview remains publicly accessible without restriction.

22. As of that date, FOXY 107.1's YouTube channel had approximately 865 subscribers, and the interview video had been viewed approximately 3,600 times, resulting in ongoing dissemination of the defamatory statements.

23. During the broadcast, Ms. McKnight made numerous false and defamatory statements of fact concerning Plaintiff, including assertions that Plaintiff was emotionally abusive, mentally abusive, and a neglectful father, *"...which I've had to do with them since we were asked to leave our house at two and three years old and four and from that moment I tried to start building their skin layering on protection on safety for them, making their spaces safe."*

24. Additionally, Ms. McKnight insinuated that Plaintiff had been dishonest regarding family matters, and harmful to the emotional well-being of their children, *"..one story that came and I do talk about it in the book, that came where, um, he made you know the comments, oh this one, he made the comments that I, you know, apparently trapped him and told him that I was going to have an abortion and that he found out you know way later that I didn't..."* and *"...so my older son is having to hear this, so that I, he's 35 now, he was 32 at the time, still now, I'm having to call my children to put little fires out that have been created and this was just a lie."*

25. The false statements and insinuations did not stop there, as the interview continued, Ms. McKnight stated that Plaintiff was negative to her when their son, Niko, was recovering from cancer, in reality, it was Ms. McKnight who allowed the negativity.

> *"I did receive a out of the blue text from him about a year ago when our son Niko was you know going through his healing, his healing process, um, with his cancer...so I did get a very, very, negative, very negative text from him during that process and he, I'm you asked that because then I can address, he made a comment where he hasn't contacted our son because I left a very, um, he didn't say harsh, very aggressive voicemail and in a way I will say that that is true because once the text was received, I made it very, very, very clear that this type of negativity is not what going to be allowed in this space..."*

26. Ms. McKnight further made insinuations that due to Plaintiff being so emotionally and mentally abusive to her and their children, they have all ceased interaction with him, *"but honestly, at this point, it's just been so damaging with even when they've, we've all just stepped away from it because any response, any, any type of tidbit would fuel the fire for the attention that he apparently needs and he's got to get it from us."*

27. These statements by Ms. McKnight were presented as factual assertions, not opinion, speculation, or rhetorical commentary.

28. Ms. Clark did not act as a neutral interviewer. Instead, she affirmatively encouraged, reinforced, and amplified Ms. McKnight's defamatory statements through her responses, tone, and follow-up questioning.

29. During the January 23, 2025, broadcast, Ms. Clark responded to Ms. McKnight's defamatory statements concerning Plaintiff with affirmative commentary, physical affirmatory body language as seen in the YouTube video, and first-hand experience with Plaintiff to further the conversation with Ms. McKnight and validate Ms. McKnight's accusations, *"I did an interview with him during the pandemic that was a moment for me... and he started saying some stuff and I was like, I don't even really know what to do with my face right now...but here he is saying his songs never meant anything until he met his current wife... it just sounded like crazy talk..."*

30. After characterizing Plaintiff's prior public statements as "crazy talk," Ms. Clark directly asked Ms. McKnight, *"Was it crazy talk to you too?"* which invited Ms. McKnight to further expand upon negative allegations about Plaintiff.

31. When Ms. McKnight made allegations that Plaintiff was abusive or damaging to his children, Ms. Clark responded by asking Ms. McKnight, *"How have the things that he said in the public eye affected your kids?"*

32. By asking this question, Ms. Clark allowed and invited Ms. McKnight to further defame Plaintiff.

33. Instead of inquiring about the accuracy of Ms. McKnight's accusations, Ms. Clark continued to ask similar questions that posed her in agreement with Ms. McKnight's accusations, *"Do you ever talk to Brian? Have you had been able to have any conversation with him to say what are you thinking, stop this foolishness?"*

34. Ms. Clark further characterized Plaintiff's conduct as damaging and unnecessary by stating, *"It would be different if all of this was taking place in 1982... you can't escape any information anymore."*

35. Ms. Clark's responses and questions signaled agreement with and validation of the defamatory narrative of Ms. McKnight.

36. At no point during the broadcast did Ms. Clark question the accuracy of the allegations, request verification, provide context, or advise listeners that the statements were unverified, disputed, or solely Ms. McKnight's opinion.

37. Defendant Karen Clark was not a passive participant in the January 23, 2025, broadcast, but instead personally authored, spoke, and endorsed defamatory statements, and intentionally framed and solicited further defamatory accusations concerning Plaintiff.

38. Defendant Karen Clark's statements, questions, tone, and commentary were her own words and actions, not merely the repetition of another speaker's statements, and were understood by listeners and viewers as factual assertions endorsed by her personally.

39. Defendant FOXY 107.1/104.3 likewise failed to provide Plaintiff any opportunity to respond to the allegations, failed to issue a disclaimer, and failed to take any corrective action either during or after the broadcast.

40. Additionally, Defendant Urban One, Inc. has allowed other affiliates to broadcast similar false information without verifying the information first nor did they provide Plaintiff an opportunity to respond to the allegations.

41. On or about December 15, 2025, a separate Urban One, Inc.–owned and nationally syndicated program, *The Rickey Smiley Morning Show*, released and published an episode of the *Rickey Smiley Morning Show Podcast* entitled "Brian McKnight Jr. Shares The One Thing His Dying Brother Niko Wanted From Their Father."

42. *The Rickey Smiley Morning Show* is produced, edited, distributed, and controlled by Urban One, Inc., and is published across multiple platforms, including terrestrial radio

rebroadcasts, YouTube, Facebook, and Instagram, through Urban One–controlled and affiliated accounts.

43. Plaintiff did not appear on the Rickey Smiley Morning Show, nor did he provide a live or contemporaneous interview for the December 15, 2025, episode.

44. Instead, Defendants selected, excerpted, edited, and republished a clip from a separate interview previously given by Brian McKnight Jr. to another outlet and incorporated that clip into the Rickey Smiley Morning Show episode.

45. The edited clip was presented without full historical context, clarification, or Plaintiff's response, and was framed to convey the allegation that Plaintiff refused to tell his son, Niko McKnight, that he loved him during Niko's final days while battling cancer.

46. During the episode, hosts and commentators reacted to and endorsed the implication of the edited clip, including statements such as "That does not surprise me" and "That's unfortunate," thereby validating and reinforcing the defamatory narrative.

47. As of the date of this filing, the December 15, 2025, episode remains publicly accessible on Rickey Smiley's (hereinafter "Mr. Smiley") official YouTube channel.

48. Mr. Smiley's YouTube channel has approximately 865,000 subscribers, and this specific episode has received approximately 2,404 views which materially expands the reach of the defamatory allegations.

49. The December 15, 2025, republication occurred after Defendants had already broadcast and published substantially similar defamatory allegations through FOXY 107.1, and therefore constitutes knowing secondary republication within the same corporate media group.

50. At the time of this republication, Urban One knew or should have known that the allegations concerning Plaintiff were disputed, incomplete, and defamatory, yet nevertheless chose to republish them without verification, correction, disclaimer, or opportunity for Plaintiff to respond.

51. Additionally, prior to the December 15, 2025, republication, Plaintiff had personally and directly communicated with Mr. Smiley over the course of several years regarding the circulation of false and misleading statements about Plaintiff's relationship with his children.

52. During those prior communications, Plaintiff specifically advised Mr. Smiley that similar narratives and allegations being discussed on or associated with *The Rickey Smiley Morning Show* were false, misleading, and harmful, and requested that such misinformation be corrected and not repeated.

53. Despite this prior notice and direct knowledge, Mr. Smiley and Defendants continued to publish, republish, and amplify the same or substantially similar false allegations concerning Plaintiff, including through the December 15, 2025, episode of *The Rickey Smiley Morning Show Podcast*.

54. The repetition of substantially similar defamatory allegations across multiple Urban One–owned programs, stations, and digital platforms, especially after having been place on notice of their falsity, demonstrates a pattern of reckless disregard for the truth and systemic editorial failure, rather than an isolated or inadvertent publication.

55. Through this conduct, Defendants did not act as neutral conduits, but instead actively participated in the republication of defamatory statements, lending the credibility and

Doc ID: 6a8124b9c6cef9dd04c071b7e978db51154197bc

authority of a commercial radio station to false allegations concerning Plaintiff's character, parenting, and personal integrity.

56. The continued availability of the interview on Defendants' YouTube channels constitutes ongoing publication of the defamatory statements and continues to cause harm to Plaintiff's reputation and professional relationships.

57. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered reputational harm, emotional distress, humiliation, and disruption to existing and prospective professional relationships.

**COUNT ONE – DEFAMATION**

58. Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

59. Defendants made, published, republished, and caused to be published false statements of fact concerning Plaintiff to third parties beginning in or about January 23, 2025, and December 15, 2025.

60. Defendants' defamatory publications include the FOXY 107.1 broadcast and YouTube publication involving Julie McKnight, and the December 15, 2025, Rickey Smiley Morning Show Podcast episode republishing an edited interview clip concerning Plaintiff.

61. These defamatory statements from these publications include, but are not limited to, the following:

    a. *I did an interview with him during the pandemic that was a moment for me... and he started saying some stuff and I was like, I don't even really know what to do with my face right now...but here he is saying his songs never meant anything until he met his current wife... it just sounded like crazy talk..."*

    b. *"Was it crazy talk to you too?"*

c. *"How have the things that he said in the public eye affected your kids?"*

d. *"Do you ever talk to Brian? Have you had been able to have any conversation with him to say what are you thinking, stop this foolishness?"*

e. *"It would be different if all of this was taking place in 1982... you can't escape any information anymore."*

62. In response to, and encouraged by, these statements and questions, Julie McKnight made further defamatory assertions portraying Plaintiff as emotionally abusive, mentally abusive, dishonest, harmful to his children, and unfit as a parent.

63. The foregoing statements were broadcast over terrestrial radio and published on Defendants' YouTube channel, where they remain publicly accessible and have been viewed thousands of times.

64. The statements were presented as factual assertions, not opinion, parody, or rhetorical hyperbole.

65. The statements were of and concerning Plaintiff, as Defendants directly identified Plaintiff by name and referenced his personal life, family, and public conduct.

66. Listeners and viewers who heard and viewed the broadcast understood the statements to refer to Plaintiff.

67. Each of the foregoing statements was false.

68. The statements accused Plaintiff of conduct involving moral turpitude, parental unfitness, dishonesty, and behavior incompatible with his lawful profession and public standing.

69. Defendants knew the statements were false or acted with reckless disregard for their truth or falsity, including by affirmatively endorsing the statements, failing to verify them,

purposefully avoiding the truth, and continuing to republish the statements after their initial broadcast.

70. Defendants' conduct constitutes actual malice under North Carolina law.

Defendants' statements constitute defamation per se, and damages are presumed.

71. As a direct and proximate result of Defendants' defamatory conduct, Plaintiff has suffered injury to his reputation, loss of goodwill, emotional distress, humiliation, embarrassment, and economic damages.

72. Defendants' actions were malicious, willful, wanton, and undertaken with conscious and reckless disregard of Plaintiff's rights, entitling Plaintiff to compensatory and punitive damages.

## COUNT TWO – NEGLIGENT AND RECKLESS PUBLICATION AND SUPERVISION

73. Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

74. At all relevant times, Defendant Urban One, Inc. owned, operated, managed, supervised, and controlled Defendant FOXY/WFXC/K 107.1/104.3 Radio Station and its on-air programming in addition to the Ricky Smiley Morning Show.

75. Defendant Karen Clark owed Plaintiff a duty to exercise reasonable care in the publication of statements concerning an identifiable individual and breached that duty by knowingly broadcasting unverified, false, and defamatory accusations, despite the foreseeable risk of reputational harm.

76. Defendant Urban One owed Plaintiff a duty to exercise reasonable care in the supervision, training, and oversight of its on-air hosts, employees, agents, and broadcast content.

77. Defendant FOXY/WFXC/K 107.1/104.3 likewise owed a duty to exercise reasonable care in the publication and republication of statements concerning identifiable individuals, including public figures.

78. Defendants breached these duties by allowing false and defamatory statements concerning Plaintiff to be broadcast and republished without reasonable investigation, verification, contextual disclaimer, or corrective action.

79. Defendants further breached their duties by affirmatively permitting their on-air host, Karen Clark, to frame, endorse, and amplify defamatory statements concerning Plaintiff during a scheduled broadcast conducted under the station's brand and authority.

80. Defendant Urban One, Inc., breached their duties by allowing the Rickey Smiley Morning Show to republish, endorse, and amplify defamatory statements concerning Plaintiff during a scheduled broadcast that is conducted under their brand and authority.

81. Defendants knew or should have known that the allegations aired during the interview accused Plaintiff of conduct involving moral turpitude, parental unfitness, and dishonesty, and that such allegations would foreseeably cause reputational harm.

82. Despite this knowledge, Defendants failed to:

    a. Require verification of the allegations before broadcast;

    b. Interrupt or correct the broadcast when defamatory statements were made;

    c. Provide any disclaimer or clarification to listeners;

    d. Offer Plaintiff an opportunity to respond; or

    e. Remove, edit, or mitigate the content after publication.

83. Defendants' failure to take any of these reasonable steps constituted negligence and reckless indifference to Plaintiff's rights.

Doc ID: 6a8124b9c6cef9dd04c071b7e978db51154197bc

84. Defendants' conduct went beyond mere inadvertence and reflected a conscious disregard for the high probability that false statements would be broadcast and republished.

85. As a direct and proximate result of Defendants' negligent and reckless conduct, Plaintiff suffered reputational harm, emotional distress, humiliation, loss of goodwill, and economic damages.

86. Defendants are liable for all damages proximately caused by their negligent and reckless publication and supervision.

## COUNT THREE – VICARIOUS LIABILITY/RESPONDEAT SUPERIOR

87. Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

88. At all relevant times, Karen Clark was an employee, agent, and on-air host of Defendant FOXY/WFXC/K 107.1/104.3 Radio Station and acted with the actual and apparent authority of Defendants.

89. At all relevant times, Rickey Smiley, was an employee, agent, and on-air host of Defendant Urban One, Inc's podcast the Rickey Smiley Morning Show.

90. Rickey Smiley's conduct in republishing the excerpt from Brian McKnight, Jr.'s interview was undertaken within the course and scope of his employment and in furtherance of Defendant Urban One, Inc.'s business interests.

91. Karen Clark's conduct during the January 23, 2025, broadcast—including her statements, questioning, framing of discussion topics, and republication of defamatory content—was undertaken within the course and scope of her employment and in furtherance of Defendants' business interests. Karen Clark and Rickey Smiley's actions were performed during a scheduled broadcast, using Defendants' facilities, equipment, branding, and

distribution platforms, and for the purpose of generating audience engagement, ratings, and online visibility.

92. Defendant Urban One, Inc. authorized, ratified, and benefited from the broadcast and its continued availability on Defendants' official YouTube channel.

93. At all relevant times, Karen Clark's acts and omissions were imputable to Defendant FOXY/WFXC/K 107.1/104.3, and both Karen Clark and Rickey Smiley's acts and omissions were imputable to Defendant Urban One, Inc. under the doctrine of respondeat superior.

94. Defendants are therefore jointly and severally liable for the defamatory statements published and republished by Karen Clark  and Rickey Smiley and for all damages proximately caused thereby.

95. Defendants' vicarious liability includes liability for compensatory damages, presumed damages for defamation per se, and punitive damages.

### COUNT FOUR – PUNITIVE DAMAGES

96. Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

97. Defendants' conduct was accompanied by aggravating factors as defined by N.C. Gen. Stat. § 1D-15, including malice and willful or wanton conduct.

98. Defendants knowingly made and published false statements of fact concerning Plaintiff, with the intent to injure Plaintiff or with conscious and reckless indifference to Plaintiff's rights.

99. Defendants' conduct was deliberate, intentional, and manifested a reckless disregard for the rights and safety of Plaintiff, and was reasonably likely to cause, and did cause, substantial harm.

100.     Plaintiff is entitled to recover punitive damages in an amount sufficient to punish Defendants for their misconduct and to deter Defendants and others from engaging in similar conduct in the future.

## JURY TRIAL DEMAND

Plaintiff Brian McKight hereby demands a jury trial on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays the court for the following relief from the defendant:

1.  Award Plaintiff compensatory damages in excess of $25,000 for Defamation ;

2.  Award Plaintiff compensatory damages in excess of $25,000 for Negligent and Reckless Publication and Supervision;

3.  Award Plaintiff compensatory damages in excess of $25,000 for Vicarious Liability/Respondeat Superior;

4.  Award Plaintiff punitive damages in excess of $25,000.00;

5.  Award Plaintiff all expenses and costs, including attorneys' fees; and

6.  Grant such other and further relief as the Court deems appropriate.

This the 27th day of January 2026.

RANCHOR HARRIS LAW, PLLC

S. Ranchor Harris
N.C. Bar No. 21022
Ranchor Harris Law, PLLC
1784 Heritage Center Drive
Suite 204-E
Wake Forest, NC 27587
919-249-5006 (Direct Line)
919-589-4845 (Facsimile)
ranchorharris.com
ranchor@ranchorharris.com

Doc ID: 6a8124b9c6cef9dd04c071b7e978db51154197bc