## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
## RALEIGH DIVISION

| | |
|---|---|
| BRIAN MCKNIGHT,<br><br>　　　Plaintiff,<br><br>v.<br><br>FOXY/WFXC/K 107.1/104.3 RADIO STATION; URBAN ONE, INC.; KAREN CLARK,<br><br>　　　Defendants. | Civil Action No.　5:26-cv-102 |

## DEFENDANT URBAN ONE'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Urban One, Inc, including its d/b/a FOXY/WFXC/K 107.1/104.3 Radio Station, hereby moves this Court to dismiss Plaintiff Brian McKnight's Amended Complaint in its entirety with prejudice for failure to state a claim. In support of its motion, Urban One relies on this memorandum.

i

## **TABLE OF CONTENTS**

Page

INTRODUCTION ................................................................................................................ 1

FACTUAL BACKGROUND ............................................................................................... 2

LEGAL STANDARD........................................................................................................... 4

ARGUMENT ........................................................................................................................ 5

I.     PLAINTIFF HAS FAILED TO ESTABLISH A CLAIM FOR DEFAMATION. ............ 5

        A.     The Alleged Statements By Ms. Clark Cannot be Reasonably Interpreted as Stating Facts About Plaintiff. ............................................................... 5

        B.     Plaintiff Cannot Establish a Claim Based on Ms. McKnight's Statements............ 7

        C.     Plaintiff Cannot Assert a Claim for Defamation Based on Any Statements Made on the Rickey Smiley show. .......................................................... 9

        D.     Plaintiff has Failed to Establish any Statements Were Made with Actual Malice. ........................................................................................................ 10

II.    PLAINTIFF'S NEGLIGENT AND RECKLESS PUBLICATION AND SUPERVISION COUNT SHOULD BE DISMISSED. ...................................................... 12

        A.     Negligent and Reckless Publication is not a Cause of Action. ............................ 12

             1.     Urban One's Employees/Agents Have Not Committed Defamation ....... 13

III.   PLAINTIFF'S VICARIOUS LIABILITY CLAIM FAILS BECAUSE URBAN ONE'S EMPLOYEES/AGENTS HAVE NOT COMMITTED DEFAMATION ........... 15

IV.   PLAINTIFF IS NOT ENTITLED TO PUNITIVE DAMAGES. ..................................... 16

CONCLUSION.................................................................................................................... 17

**TABLE OF AUTHORITIES**

<b>Page(s)</b>

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..................................................................................................4

*Barker v. Kimberly-Clark Corp.*,
  524 S.E.2d 821, 136 N.C.App. 455 (2000)..................................................12, 13

*Daniels v. Metro Magazine Holding Co., L.L.C.*,
  179 N.C. App. 533, 634 S.E.2d 586 (2006), *disc. rev. denied*, 361 N.C. 692,
  654 S.E.2d 251 (2007) ...........................................................................................6, 7

*Darling v. Falls*,
  236 F.Supp.3d 914 (M.D.N.C. 2017) ......................................................................4

*Desmond v. News & Observer Publ. Co.*,
  241 N.C. App. 10, 772 S.E.2d 128 (2015) (*Desmond I*)............................................9

*Desmond v. News & Observer Publ. Co.*,
  375 N.C. 21, 846 S.E. 2d 647 661 (2020) (*Desmond II*) ...................................10, 11

*Doe v. Diocese of Raleigh*,
  776 S.E.2d 29, 242 N.C. App. 42 (2015)...............................................................11

*Griffin v. Holden*,
  180 N.C. App. 129, 636 S.E.2d 298 (2006).........................................................5, 7

*Hendrix v. Town of West Jefferson*,
  273 N.C. App. 27 (N.C. App. 2020).......................................................................14

*Jolly v. Academy Collection Serv., Inc.*,
  400 F. Supp. 2d 851 (M.D.N.C. 2005) .............................................................5, 13, 14

*McKinney v. Avery Journal, Inc.*,
  99 N.C.App. 529 (N.C. App. 1990).......................................................................15

*New York Times Co. v. Sullivan*,
  376 U.S. 254 (1964)..................................................................................................9

*Osborn v. Leach*,
  135 N.C. 628, 47 S.E. 811 (1904)....................................................................15, 16

*Renwick v. News & Observer Pub. Co.*,
  310 N.C. 312, 312 S.E.2d 405, *cert. denied*, 469 U.S. 858, 105 S.Ct. 187, 83
  L. Ed. 2d 121 (1984) ...........................................................................................7, 8, 9

Case 5:26-cv-00102-M-RN     Document 17     Filed 04/03/26     Page 3 of 22

*Scott v. Statesville Plywood & Veneer Co.*,
   240 N.C. 73, 81 S.E.2d 146 (1954)......................................................................................5

*Stutts v. Duke Power Co.*,
   47 N.C. App. 76, 266 S.E.2d 861 (1980).............................................................................5, 8

*Varner v. Bryan*,
   113 N.C. App. 697, 440 S.E.2d 295 (1994).........................................................................9

**Statutes**

28 U.S.C. §§1332 and 1442 .....................................................................................................1

N.C. Gen. Stat. § 1D-15 ..........................................................................................................15

N.C. Gen. Stat. § 99-1..............................................................................................................15

N.C. Gen. Stat. § 99-5..............................................................................................................14

**Other Authorities**

First Amendment ......................................................................................................................9

## INTRODUCTION

Plaintiff Brian McKnight ("Plaintiff") initiated this action against Urban One, Inc. and its d/b/a FOXY/WFXC/K 107.1/104.3 Radio Station ("FOXY") (collectively, "Urban One") on January 22, 2026. On January 27, 2026, Plaintiff amended his complaint to add Urban One's employee Karen Clark ("Ms. Clark") (with Urban One, "Defendants"). Plaintiff alleges that Defendants defamed Plaintiff and that Urban One was negligent in supervising Ms. Clark and Rickey Smiley. ECF 1-1. On February 20, 2026, Urban One filed a notice of removal of this action to federal court based on diversity jurisdiction pursuant to 28 U.S.C. §§1332 and 1442. ECF 1. No remand motion has been filed.

Plaintiff's Amended Complaint states that he is public figure, specifically that he is a "nationally and internationally recognized singer, songwriter, producer, and performer . . . ." ECF 1-1 at 8. Plaintiff's claims are based on alleged defamation committed against him by a third party (his ex-wife Julie McKnight), whom Ms. Clark interviewed, and for alleged defamatory statements by Urban One's employees/agents, Ms. Clark and Mr. Smiley (not a named defendant).

Plaintiff's Amended Complaint should be dismissed because Plaintiff's allegations fail to state plausible claims for relief. First, the alleged defamatory statements are either statements of opinion, statements of the speaker's state of mind, or are not identified at all (with regard to the allegations pertaining to Mr. Smiley). Second, Plaintiff pleads no facts to support the required showings of actual malice or special damages, and in fact Plaintiff himself characterizes the alleged defamatory statements as **"unverified, disputed, or solely Ms. McKnight's opinion"** (ECF 1-1 at 14 (emphasis added)), which is fatal to any assertion of actual malice (since Plaintiff admits that the statements at issue are not known to be factually false). Third, Plaintiff did not provide the

1

notice required by North Carolina law, which is fatal to at least his punitive damages claim. For these reasons, the Amended Complaint should be dismissed with prejudice.

## FACTUAL BACKGROUND

Plaintiff alleges that he is a "nationally and internationally recognized singer, songwriter, producer, and performer . . . ." ECF 1-1 at 8. Plaintiff alleges two publications by Urban One have defamed him and have impacted the trust the public has in him and his credibility and professional goodwill. ECF 1-1 at 10-17.

Plaintiff alleges that Julie McKnight ("Ms. McKnight") has perpetuated a defamatory narrative accusing Plaintiff "of abuse, neglect, dishonesty, and intentional interference with careers" in her book, *Mama Bear: Beautifully Blended* and other interviews. ECF 1-1 at 10-11. Plaintiff alleges that Ms. McKnight "made numerous false and defamatory statements of fact concerning Plaintiff." ECF 1-1 at 11-12. Plaintiff's allegations are focused on Ms. Clark's interview of Ms. McKnight on January 23, 2025. ECF 1-1 at 10-11. Plaintiff alleges that Ms. Clark was not a neutral interviewer and rather affirmed Ms. McKnight's defamatory statements and invited Ms. McKnight to further defame Plaintiff through her questioning. ECF 1-1 at 12-13.

Plaintiff identifies the following statements made by Ms. McKnight for his defamation claims, none of which can support defamation allegations (as noted in [   ] following the quotes):

- *"...which I've had to do with them since we were asked to leave our house at two and three years old and four and from that moment I tried to start building their skin layering on protection on safety for them, making their spaces safe."* [does not mention Plaintiff and stating Ms. McKnight's perspective]

- *"..one story that came and I do talk about it in the book, that came where, um, he made you know the comments, oh this one, he made the comments that I, you know, apparently trapped him and told him that I was going to have an abortion and that he found out you know way later that I didn't... "* and *"...so my older son is having to hear this, so that I, he's 35 now, he was 32 at the time, still now, I'm having to call my children to put little fires out that have been created and this was just a lie. "* [either opinions or are about what Ms. McKnight allegedly said to Plaintiff]

2

- *"I did receive a out of the blue text from him about a year ago when our son Niko was you know going through his healing, his healing process, um, with his cancer...so I did get a very, very, negative, very negative text from him during that process and he, I'm you asked that because then I can address, he made a comment where he hasn't contacted our son because I left a very, um, he didn't say harsh, very aggressive voicemail and in a way I will say that that is true because once the text was received, I made it very, very, very clear that this type of negativity is not what going to be allowed in this space... "* [statements of opinion regarding negativity, harshness, and aggression"]

- *"but honestly, at this point, it's just been so damaging with even when they've, we've all just stepped away from it because any response, any, any type of tidbit would fuel the fire for the attention that he apparently needs and he's got to get it from us. "* [statements about Ms. McKnight's state of mind]

Plaintiff identifies the following statements by Ms. Clark for his claims:

- ["]*I did an interview with him during the pandemic that was a moment for me... and he started saying some stuff and I was like, I don't even really know what to do with my face right now...but here he is saying his songs never meant anything until he met his current wife... it just sounded like crazy talk..."* [Ms. Clark's state of mind or her opinion]

- *"Was it crazy talk to you too?"* [a question]

- *"How have the things that he said in the public eye affected your kids?"* [a question]

- *"Do you ever talk to Brian? Have you had been able to have any conversation with him to say what are you thinking, stop this foolishness?"* [a question or at most an opinion]

- *"It would be different if all of this was taking place in 1982... you can't escape any information anymore."* [commentary not mentioning Plaintiff]

With respect to the Rickey Smiley Morning Show, Plaintiff's allegations relate to a video from December 15, 2025. ECF 1-1 at 14. Plaintiff alleges that Mr. Smiley played an edited clip of Brian McKnight, Jr. that perpetuated a defamatory narrative. ECF 1-1 at 15, 17. However, Plaintiff does not identify any specific statements or content from this video that Plaintiff asserts are defamatory. *See* ECF 1-1 at 17-19. The only specific allegedly defamatory statements identified by Plaintiff for this allegation are: "That does not surprise me" and "That's unfortunate,"

3

which are simply statements of opinion and Plaintiff does not identify the alleged speaker for either statement.  ECF 1-1 at 15.

Plaintiff alleges that Urban One made and published these purported defamatory statements through an "edited clip" by Mr. Smiley and an interview with Ms. McKnight.  *See* ECF 1-1 at 17. Plaintiff also brings a count for Urban One's negligent supervision of Ms. Clark and Rickey.  *See* ECF 1-1 at 19-21.  Plaintiff further alleges that Mr. Smiley and Ms. Clark's acts were individual acts of defamation for which Urban One should be liable for under a theory of vicarious liability. *See* ECF 1-1 at 21-22.  Finally, Plaintiff asserts that he is entitled to punitive damages based on certain aggravating factors including malice and willful conduct.  *See* ECF 1-1 at 22-23.

**LEGAL STANDARD**

"A complaint may fail to state a claim upon which relief can be granted in two ways: first, by failing to state a valid legal cause of action, *i.e.*, a cognizable claim," or "second, by failing to allege sufficient facts to support a legal cause of action[.]"  *Darling v. Falls*, 236 F.Supp.3d 914, 920 (M.D.N.C. 2017).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The plausibility standard requires a plaintiff show that success on the merits is more than a "sheer possibility."  *Id.*  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . Where a complaint fails to plead facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  *Id.* (quotations omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* at 679.

4

**ARGUMENT**

**I.      Plaintiff Has Failed to Establish a Claim for Defamation.**

In order to recover for defamation in North Carolina, a "plaintiff must allege and prove that the defendant made false, defamatory statements of or concerning the plaintiff, which were published to a third person, causing injury to the plaintiff's reputation." *Griffin v. Holden*, 180 N.C. App. 129, 133, 636 S.E.2d 298, 302 (2006) (quoting *Smith–Price v. Charter Behavioral Health Sys.,* 164 N.C.App. 349, 356, 595 S.E.2d 778, 783 (2004)).  Plaintiff identifies seven (7) defamatory statements by Urban One employees/agents (as opposed to statements by Ms. McKnight).  ECF 1-1 at 15, 17-18.  As explained below, Plaintiff fails to establish a valid claim for defamation based on any of these statements.

As an initial matter, to the extent Plaintiff seeks to base his defamation claims on statements not identified in the Amended Complaint, any such claim must be rejected.  In order to prevail on a claim for defamation, "the words attributed to [the] defendant [must] be alleged substantially *in haec verba*, or with sufficient particularity to enable the court to determine whether the statement was defamatory." *Stutts v. Duke Power Co.*, 47 N.C. App. 76, 84, 266 S.E.2d 861 (1980) (internal quotation marks omitted); *accord Jolly v. Academy Collection Serv., Inc.*, 400 F. Supp. 2d 851, 861 (M.D.N.C. 2005) (construing North Carolina law); *see also Scott v. Statesville Plywood & Veneer Co.*, 240 N.C. 73, 75, 81 S.E.2d 146 (1954) ("The declaration or complaint ought to state the libel in the original language.").  Any statement not expressly identified in Plaintiff's Amended Complaint cannot be the basis of Plaintiff's defamation claims.

**A.      The Alleged Statements By Ms. Clark Cannot be Reasonably Interpreted as Stating Facts About Plaintiff.**

Plaintiff alleges the following "defamatory" statements made by Ms. Clark, that were published by Urban One (ECF 1-1 at 17-18):

5

a. [“]*I did an interview with him during the pandemic that was a moment for me… and he started saying some stuff and I was like, I don't even really know what to do with my face right now…but here he is saying his songs never meant anything until he met his current wife…it just sounded like crazy talk…”*

b. *“Was it crazy talk to you too?”*

c. *“How have the things that he said in the public eye affected your kids?”*

d. *“Do you ever talk to Brian? Have you had been able to have any conversation with him to say what are you thinking, stop this foolishness?”*

e. *“It would be different if all of this was taking place in 1982…you can't escape information anymore.”*

These statements are not the type of speech that can support a defamation claim, even before we consider the fact that Plaintiff is a public figure. As stated by the court in *Daniels*:

> There are, moreover, constitutional limits on the type of speech subject to a defamation action. If a statement cannot reasonably be interpreted as stating actual facts about an individual, it cannot be the subject of a defamation suit. Rhetorical hyperbole and expressions of opinion not asserting provable facts are protected speech. . . . Although someone cannot preface an otherwise defamatory statement with "in my opinion" and claim immunity from liability, a pure expression of opinion is protected because it fails to assert actual fact. Rhetorical hyperbole, in contrast, might appear to make an assertion, but a reasonable reader or listener would not construe that assertion seriously. . . . In determining whether a statement can be reasonably interpreted as stating actual facts about an individual, courts look to the circumstances in which the statement is made. Specifically, we consider whether the language used is loose, figurative, or hyperbolic language, as well as the general tenor of the article.

*Daniels v. Metro Magazine Holding Co., L.L.C.*, 179 N.C. App. 533, 538, 634 S.E.2d 586, 590 (2006) (citation omitted), *disc. rev. denied*, 361 N.C. 692, 654 S.E.2d 251 (2007).

The Ms. Clark statements identified by Plaintiff cannot reasonably be interpreted as stating actual facts about Plaintiff. The alleged "defamatory statements" are not truly factual statements— most are merely questions. *See* D.E. 1-1 at 17-18. And any statement not solely a question, is at most an expression of opinion. *See* ECF 1-1 at 17-18. *See Daniels*, 179 N.C. App. at 538, 634 S.E.2d at 590 ("[A] pure expression of opinion is protected because it fails to assert actual fact.").

6

These statements are not sufficient to support a claim for defamation. As a result, the above identified statements cannot support a defamation claim.

**B.** **Plaintiff Cannot Establish a Claim Based on Ms. McKnight's Statements.**

To the extent Plaintiff seeks to establish a claim for defamation based on Ms. McKnight's statements, this claim must fail. Ms. McKnight's statements cannot be imputed to Urban One because Ms. McKnight is not an employee or agent of Urban One, and the Amended Complaint does not allege otherwise. In order to establish a claim for defamation, Plaintiff must allege Defendants **made** the alleged false statement. *See Griffin,* 180 N.C. App. at 133, 636 S.E.2d at 302. Plaintiff does not, and cannot, allege Ms. McKnight's statements were made by or imputed to Urban One. *See generally* ECF 1-1. Since Plaintiff cannot establish that these statements were made by Urban One, any claim against Urban One based on Ms. McKnight's statements must necessarily fail.

Further, even if Urban One could be held liable for the statement of a third party, as noted above, the statements made by Ms. McKnight are either statements of opinion or statements about her own state of mind:

- *"...which I've had to do with them since we were asked to leave our house at two and three years old and four and from that moment I tried to start building their skin layering on protection on safety for them, making their spaces safe."*

  [does not mention Plaintiff and stating Ms. McKnight's perspective]

- *..one story that came and I do talk about it in the book, that came where, um, he made you know the comments, oh this one, he made the comments that I, you know, apparently trapped him and told him that I was going to have an abortion and that he found out you know way later that I didn't... "* and *"...so my older son is having to hear this, so that I, he's 35 now, he was 32 at the time, still now, I'm having to call my children to put little fires out that have been created and this was just a lie. "*

  [either opinions or are about what Ms. McKnight allegedly said to Plaintiff]

7

- *"I did receive a out of the blue text from him about a year ago when our son Niko was you know going through his healing, his healing process, um, with his cancer...so I did get a very, very, negative, very negative text from him during that process and he, I'm you asked that because then I can address, he made a comment where he hasn't contacted our son because I left a very, um, he didn't say harsh, very aggressive voicemail and in a way I will say that that is true because once the text was received, I made it very, very, very clear that this type of negativity is not what going to be allowed in this space... "*

[statements of opinion regarding negativity, harshness, and aggression"]

- *"but honestly, at this point, it's just been so damaging with even when they've, we've all just stepped away from it because any response, any, any type of tidbit would fuel the fire for the attention that he apparently needs and he's got to get it from us. "*

[statements about Ms. McKnight's state of mind and her opinions]

These are not the types of statements that can support a defamation claim, and certainly not one against Urban One or its employees/agents. *See Daniels*, 179 N.C. App. at 538, 634 S.E.2d at 590 ("[A] pure expression of opinion is protected because it fails to assert actual fact."). Further, while Plaintiff identifies the above statements by Ms. McKnight, he does not explain how any are specifically defamatory, what in them is allegedly factually false, let alone how they are defamatory per se. Any "insinuations" from the Amended Complaint are not sufficient to establish defamation *per se*. *See* ECF 1-1 at 11-14.

In reviewing whether a plaintiff has stated a claim of defamation *per se*, the allegedly defamatory statement "alone must be construed, stripped of all insinuations, innuendo, colloquium and explanatory circumstances. The [statement] must be defamatory on its face within the four corners thereof." *Renwick v. News & Observer Pub. Co.*, 310 N.C. 312, 318-19, 312 S.E.2d 405, 409 (internal quotation marks and citation omitted), *cert. denied*, 469 U.S. 858, 105 S.Ct. 187, 83 L. Ed. 2d 121 (1984). "The question always is how would ordinary men naturally understand the [statement.]" *Id.* at 318, 312 S.E.2d at 409 (citation omitted). Merely alleging "insinuations" is

8

insufficient. For these reasons, and the ones further discussed below, the defamatory statements alleged by Plaintiff do not qualify under the well-established categories of defamation, whether *per se* or otherwise. *See id.* at 317, 312 S.E.2d at 409. Thus, Plaintiff's claims against Urban One through its employees/agents relating to statements by Ms. McKnight fail.

### C. Plaintiff Cannot Assert a Claim for Defamation Based on Any Statements Made on the Rickey Smiley Show.

To the extent Plaintiff attempts to rely on any statements made by Mr. Smiley or the "Rickey Smiley Morning Show" to support his claim for defamation, that claim must also fail. Regarding the alleged edited video, Plaintiff does not identify any statement in that video or explain how it was allegedly defamatory. *See generally* ECF 1-1. Plaintiff merely alleges an "edited clip was presented without full historical context, clarification, or Plaintiff's response." ECF 1-1 at 15. This is insufficient to establish a claim for defamation. For one, Plaintiff does not identify any alleged defamatory statement. Under North Carolina law, a plaintiff must allege the defamatory statement verbatim, or at a minimum, allege the statement with sufficient particularity to enable the court to determine whether the statement was defamatory. *Stutts,* 47 N.C. App. at 84, 266 S.E.2d 861. Plaintiff fails to identify any defamatory statement whatsoever regarding that video.

As for the allegations relating to the Rickey Smiley show generally, the only alleged statements identified in the Amended Complaint are two (2) statements of opinion: "That does not surprise me" and "That's unfortunate" made by unidentified speakers. ECF 1-1 at 15. These are clearly statements of opinion, and further Plaintiff fails allege who made these statements, referring only to "hosts" and "commentators" who "endorsed the implication of the edited clip." ECF 1-1 at 15. The speaker of the alleged defamation must be identified to state a claim.

9

Again, insinuations, innuendo, colloquium, and explanatory circumstances are insufficient to establish defamation. *See Renwick,* 310 N.C. at 318-19, 312 S.E.2d at 409 ("The [statement] must be defamatory on its face within the four corners thereof.").

### D. Plaintiff has Failed to Establish any Statements Were Made with Actual Malice.

In view of the above, Plaintiff's defamation claims would fail even if he were not a public figure suing a media company. When a public figures brings such a claim, the First Amendment mandates that "[w]here the plaintiff is a public official and the allegedly defamatory statement concerns his official conduct, he must prove that the statement was made with actual malice—that is, with knowledge that it was false or with reckless disregard of whether it was false or not." *Desmond v. News & Observer Publ. Co.*, 241 N.C. App. 10, 17, 772 S.E.2d 128, 135 (2015) (Desmond I) (alteration in original) (quoting *Lewis v. Rapp*, 220 N.C. App. 299, 302-03, 725 S.E.2d 597, 601 (2012)); *New York Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964) (defining malice in the context of the First Amendment)

Plaintiff admits in his Amended Complaint that he is a public figure. ECF 1-1 at 8. Thus, as a public figure, Plaintiff must show that Defendants made the statements "with knowledge that it was false or with reckless disregard of whether it was false or not." *New York Times Co. v. Sullivan*, 376 U.S. at 280; *see Varner v. Bryan*, 113 N.C. App. 697, 704, 440 S.E.2d 295, 300 (1994) (applying this definition to a defamation claim). Plaintiff fails to do so.

Plaintiff alleges that the "statements accused Plaintiff of conduct involving moral turpitude, parental unfitness, dishonesty, and behavior incompatible with his lawful profession and public standing." ECF 1-1 at 18. First, as noted above, the actual statements identified in the Amended Complaint come nowhere close to supporting these characterizations. Second, even if they did, it appears Plaintiff is conflating the statements made by Ms. McKnight with the statements made by

Urban One. The statements identified by Plaintiff that were made by Urban One (i.e. Ms. Clark and Mr. Smiley) (ECF 1-1 at 17-18), do not accuse Plaintiff of any of the characterizations noted above. *See* ECF 1-1 at 18.

Further, even assuming the statements made by Urban One were indeed statements of "actual fact," not opinion/hyperbole, and could be defamatory (they cannot), Plaintiff does not allege any facts that Urban One knew, or should have known, the statements were false or that any statements were made with a reckless disregard for the truth. A "reckless disregard for the truth" requires more than a departure from reasonably prudent conduct. *Desmond v. News & Observer Publ. Co*., 375 N.C. 21, 43, 846 S.E. 2d 647 661 (2020) (Desmond II).

> There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication. The standard is a subjective one—there must be sufficient evidence to permit the conclusion that the defendant actually had a high degree of awareness of probable falsity. As a result, failure to investigate before publishing, even when a reasonably prudent person would have done so, is not sufficient to establish reckless disregard.

*Id.*

No facts are alleged to support that the above standard has been met here. Indeed, Plaintiff's own allegations confirm that the actual malice cannot be met here, because Plaintiff characterizes the alleged defamatory statements at issue as **"unverified, disputed, or solely Ms. McKnight's opinion**." ECF 1-1 at 14 (emphasis added.).

If statements are unverified (meaning not know to be true or false), disputed (meaning there is disagreement over their falsity), or are opinions (not actionable), then it is simply impossible for the actual malice standard to be met. Plaintiff has failed to establish actual malice (and in fact admits facts preventing a finding of actual malice), therefore his claims for defamation should be dismissed with prejudice.

11

## II. Plaintiff's Negligent and Reckless Publication and Supervision Count Should be Dismissed.

### A. Negligent and Reckless Publication is not a Cause of Action.

Negligent or reckless publication is not a separate actionable tort, because publication is an element of defamation. *See Desmond II*, 846 S.E.2d at 661, 375 N.C. at 41 (finding that a plaintiff must show injury through a false statement by defendant, concerning the plaintiff, which is published to a third person for a plaintiff to recover for defamation). The act of publishing any alleged defamatory statement is not a separate act for which an employer can be liable. Defamation must be shown first, which as noted above, is not present here.

### B. Plaintiff Has Not asserted Facts to Support Negligent Supervision

An employer may be liable for an employee/agent's defamation, which includes publication, if the employer was negligent in supervising the employee. *See Doe v. Diocese of Raleigh*, 776 S.E.2d 29, 36, 242 N.C. App. 42, 50 (2015). However, again, for there to be negligence regarding a defamatory statement by an employee, there necessarily had to have been an actionable defamatory statement. If there was no defamatory statement, then there could not have been negligent supervision. So again, this claim rises or falls on the defamation claims.

To find an employer liable for negligent supervision, a plaintiff must establish "(1) the specific negligent act on which the action is founded ... (2) incompetency, by inherent unfitness or previous specific acts of negligence, from which incompetency may be inferred; and (3) either actual notice to the master of such unfitness or bad habits, or constructive notice, by showing that the master could have known the facts had he used ordinary care in oversight and supervision, ...; and (4) that the injury complained of resulted from the incompetency proved." *Id.* (citing *Medlin v. Bass,* 327 N.C. 587, 591, 398 S.E.2d 460, 462 (1990)). Even if a proper defamation claim were

asserted here, Plaintiff has not alleged sufficient facts to support recovery from Urban One under a theory of negligent/reckless supervision.

### 1. Urban One's Employees/Agents Have Not Committed Defamation

Urban One did not breach its duty to exercise reasonable care because Mr. Smiley and Ms. Clark did not make defamatory statements that Urban One negligently permitted to be aired (as demonstrated above). If there was no defamation, there can be no negligent supervision. Plaintiff further has not alleged any facts that Mr. Smiley and Ms. Clark were unfit or incompetent. Plaintiff cannot assert Urban One was negligent or reckless in supervising given that he has not alleged that Urban One was aware of any incompetence by Mr. Smiley or Ms. Clark. Plaintiff has also not alleged that the statements made and published by Mr. Smiley and Ms. Clark were the actual or proximate cause of any harm, because Plaintiff has not alleged any facts to support any special damages for defamation.

Since Plaintiff admits he is a public figure, Plaintiff must also allege facts that support actual malice to assert that Mr. Smiley and Ms. Clark committed defamation. As noted above, Plaintiff has not (and cannot) allege facts to show that. Plaintiff further asserts that Defendants committed defamation *per se*. ECF 1-1 at 19. However, slander *per se* applies to discrete false statements, which the identified defamatory statement by Urban One employees/agents do not support, because they are not – "(1) an accusation that the plaintiff committed a crime involving moral turpitude; (2) an allegation that impeaches the plaintiff in his trade, business, or profession; or (3) an imputation that the plaintiff has a loathsome disease." *Barker v. Kimberly-Clark Corp.,* 524 S.E.2d 821, 824, 136 N.C.App. 455, 459 (2000) (citing *Averitt v. Rozier,* 119 N.C.App. 216, 218, 458 S.E.2d 26, 28 (1995)).

13

Mr. Smiley and Ms. Clark did not accuse Plaintiff of any crime, let alone a shameful crime. *See* ECF 1-1 at 17-18. With respect to the Rickey Smiley Show, the Amended Complaint does not even identify any specific alleged defamatory statement. With respect to the interview with Ms. McKnight, Ms. Clark's statements come nowhere close to asserting a crime. Mr. Smiley and Ms. Clark's statements also do not relate to Plaintiff's professional incompetence*, see* ECF 1-1 at 17-18, or any loathsome disease. *See* ECF 1-1 at 17-18. All of the alleged defamatory statements relate to Ms. McKnight's commentary and perspective on her family issues with Plaintiff. The statements identified in the Amended Complaint come nowhere near meeting what would be required to show defamation, let alone defamation *per se*, actual malice, and special damages. *See Jolly*, 400 F.Supp.2d at 861; *see id.* at 863 ("Plaintiffs have not met the pleading requirements for special damages. They do mention special damages in the complaint[.] However, it is only in the statement that defendants' acts caused 'plaintiffs special, general and punitive damages.'").

As discussed above, Plaintiff also fails to show that the alleged defamatory statements are statements of fact (as opposed to opinions). With respect to Mr. Smiley, Plaintiff does not identify specific defamatory statements by him. With respect to the interview, Ms. Clark mostly just asked Ms. McKnight questions, with some minimal opinion/commentary. Thus, Urban One cannot be liable for negligent supervision of its employee/agent, because Plaintiff fails to allege facts to support an actionable defamation claim. *See Barker*, 136 N.C. App. at 464.

Likewise, Plaintiff has not alleged any facts to show that Mr. Smiley and Ms. Clark were incompetent, unfit, or committed prior acts of negligence, or facts to support that Urban One was aware of or should have been aware of such issues. Plaintiff simply applies a negligence standard broadly and without supporting factual detail. However, there must be a nexus between the employer's supervision and the acts of the employee to make the employer liable for failing to

14

supervise.  *See id* at 464 ("[T]his Court held that to support a claim of negligent supervision against an employer the plaintiff must prove: that the incompetent employee committed a tortious act resulting in injury to plaintiff and that prior to the act, the employer knew or had reason to know of the employee's incompetency.").  At most, Plaintiff only asserts that Mr. Smiley was made aware of Plaintiff's position that Ms. McKnight's commentary was defamatory.  *See* ECF 1-1 at 16.  However, the identified statements and actions Plaintiff points to are not themselves defamatory, and Plaintiff provides no other factual allegation to support negligent supervision.  Further, there is no mention of past defamatory acts by Ms. Clark at all.

Finally, Plaintiff has not alleged a specific injury arising from the general reputational harm.  For defamation *per quod*, a plaintiff is required to allege specific injuries caused by the identified defamatory statements.  *See Jolly*, 400 F.Supp.2d at 863.  Thus, there are no such factual allegations to support defamation *per quod* or defamation *per se*, which is another reason why the defamation and negligent supervision claims fail.

## III.  Plaintiff's Vicarious Liability Claim Fails Because Urban One's Employees/Agents Have Not Committed Defamation

"The principle that the employer is to be held liable for the torts of his employee when done by his authority, express or implied, or when they are within the course and scope of the employee's authority, is equally applicable to actions for slander."  *Hendrix v. Town of West Jefferson*, 273 N.C. App. 27, 32 (N.C. App. 2020) (quoting *Gillis v. Tea Co.*, 223 N.C. 470, 474-75, 27 S.E.2d 283, 286 (1943)). A party can be held liable for its agent's actions in course of carrying out its business.  At a radio station, it is a common function of the employees/agents to have people on the show to discuss various topics.  However, there is no vicarious liability here, because there is no underlying tort.  Additionally, North Carolina has limited liability for broadcasting stations with respect to statements of third parties.  NC Gen. Stat. § 99-5.  Thus,

15

Urban One would have had to act negligently in publishing the edited video and Ms. McKnight's statements. Urban One did not act negligently in publishing because there is no evidence that Urban One should have known that the statements made were false statements of fact. *See generally McKinney v. Avery Journal, Inc.*, 99 N.C.App. 529, 532 (N.C. App. 1990) (finding that the Journal did not act negligently where they relied on reputable sources to make their publication). Indeed, Plaintiff admits that the statements in dispute are **"unverified, disputed, or solely Ms. McKnight's opinion**." ECF 1-1 at 14 (emphasis added.). Thus, Plaintiff admits that the statements are not known to be factually false.

With respect to the Rickey Smiley Show, Plaintiff has not identified any specific defamatory statement and/or the speaker thereof. Urban One could not be negligent in publishing that show if Plaintiff cannot even identify the defamatory statement. With respect to Ms. Clark, as discussed above, her identified statements come nowhere close to meeting the defamation standard, or the actual malice standard that applies here. Since there has been no underlying defamation by the employees/agents in question, the vicarious liability claim fails.

## IV. Plaintiff is Not Entitled to Punitive Damages.

Plaintiff contends he is entitled to recover punitive damages under N.C. Gen. Stat. § 1D-15. ECF 1-1 at 22-23. Section 1D-15 provides that "punitive damages may be awarded only if the claimant proves that the defendant is liable for compensatory damages and that one of the following aggravating factors was present and was related to the injury for which compensatory damages were awarded: (1) Fraud. (2) Malice. (3) Willful or wanton conduct." Not only has Plaintiff failed to prove that Defendants should be liable for compensatory damages for defamation as discussed above, but he also fails to adequately allege any of the aggravating factors as required by the statute to obtain punitive damages. For this reason alone, Plaintiff's claim for punitive damages should be dismissed.

16

Further, under N.C. General Statute § 99-1, Plaintiff was required to serve notice in writing of the defamatory/false statement at least five (5) days prior to initiating the lawsuit. N.C. Gen. Stat. § 99-1. Plaintiff fails to allege any such notice was given (and in fact no such notice was given). *See* ECF 1-1. As explained by the North Carolina Supreme Court in *Osborn v. Leach*, "[t]he giving of such notice is required only for the purpose of furnishing the defendant opportunity to publish a retraction, the effect of which, as we have seen, could extend no further than to relieve from punitive damages, even when good faith, honest mistake and reasonable ground of belief are shown by the defendant." 135 N.C. 628, 640, 47 S.E. 811 (1904). Here, Plaintiff did not comply with N.C. General Statute § 99-1, so Defendants were not afforded an opportunity to publish a retraction, and thus, Plaintiff cannot recover punitive damages. *See id.* (holding that the failure to give the required five days' notice was grounds for dismissal of a claim for punitive damages).

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court grant its Motion to Dismiss in its entirety, dismiss Plaintiff's Amended Complaint with prejudice, and for all other relief the Court deems just and proper.

Dated: April 3, 2026     Respectfully submitted,

            */s/ Lauren Johnson Nichols*
            Lauren Johnson Nichols (N.C. Bar No. 59353)
            TROUTMAN PEPPER LOCKE LLP
            305 Church at North Hills Street
            Suite 1200
            Raleigh, NC 27609
            Telephone: (919) 835-4175
            Email: Lauren.Nichols@troutman.com
            *Attorney for Defendant Urban One, Inc. including*
            *d/b/a FOXY/WFXC/K 107.1/104.3 Radio Station*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 3, 2026, I caused the foregoing document to be filed with the Clerk of Court using the CM/ECF system, which will send notice of electronic filing to all counsel of record.

/s/ Lauren Johnson Nichols

Lauren Johnson Nichols
(N.C. Bar No. 59353)
*Attorney for Defendant Urban One, Inc. including d/b/a FOXY/WFXC/K 107.1/104.3 Radio Station*

18